# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

JOHN W. FERRON,

        Plaintiff,

        v.

METAREWARD, INC., et al.,

        Defendants.

**Case No. 2:09-cv-430**
**JUDGE GREGORY L. FROST**
**Magistrate Judge Mark R. Abel**

JOHN W. FERRON,

        Plaintiff,

        v.

ADTERACTIVE, INC., et al.,

        Defendants.

**Case No. 2:09-cv-440**
**JUDGE GREGORY L. FROST**
**Magistrate Judge Mark R. Abel**

JOHN W. FERRON,

        Plaintiff,

        v.

AZOOGLE.COM, INC., et al.,

        Defendants.

**Case No. 2:09-cv-512**
**JUDGE GREGORY L. FROST**
**Magistrate Judge Mark R. Abel**

**JOHN W. FERRON,**

      **Plaintiff,**

           **v.**

**SEARCH CACTUS, LLC, et al.,**

      **Defendants.**

                          **Case No. 2:09-cv-513**
                          **JUDGE GREGORY L. FROST**
                          **Magistrate Judge Mark R. Abel**


**JOHN W. FERRON,**

      **Plaintiff,**

           **v.**

**WORLD AVENUE HOLDINGS, LLC, et al.,**

      **Defendants.**

                          **Case No. 2:09-cv-520**
                          **JUDGE GREGORY L. FROST**
                          **Magistrate Judge Mark R. Abel**


## OPINION AND ORDER

This matter is before the Court for consideration of the following filings:

(1) Defendants' motions to dismiss (Doc. # 10 in 2:09-cv-430; Doc. # 12 in 2:09-cv-440; Doc. # 9 in 2:09-cv-512; Doc. # 11 in 2:09-cv-513; Doc. # 16 in 2:09-cv-520);

(2) Plaintiff's combined memorandum in opposition (Doc. # 31 in 2:09-cv-430; Doc. # 34 in 2:09-cv-440; Doc. # 29 in 2:09-cv-512; Doc. # 35 in 2:09-cv-513; Doc. # 35 in 2:09-cv-520);

(3) Defendants' joint combined reply memorandum (Doc. # 34 in 2:09-cv-430; Doc. # 37 in 2:09-cv-440; Doc. # 32 in 2:09-cv-512; Doc. # 38 in 2:09-cv-513; Doc. # 38 in 2:09-cv-520).

For the reasons that follow, this Court finds the motions well taken only in part.

## I. Background

Plaintiff, John W. Ferron, is an Ohio attorney and user of various e-mail accounts through which he has allegedly received a multitude of e-mails from various companies named as defendants in the five consolidated diversity cases before this Court. In mid-2009, Plaintiff filed the identified actions in which he asserts in his first claim that various defendants violated the Ohio Consumer Sales Practices Act ("OCSPA"), specifically Ohio Revised Code § 1345.02(A), by sending him unlawful email solicitations. Plaintiff then seeks in a second claim a declaratory judgment under Ohio Revised Code § 1345.09(D) to this effect, as well as preliminary and permanent injunctive relief to stop the transmission to any Ohio consumer of e-mail messages from Defendants that violate § 1345.02(A). Additionally, Plaintiff asserts a third claim for the intentional interference with or destruction of evidence. In addition to statutory and other compensatory damages, Plaintiff prays for an award of attorney's fees under Ohio Revised Code § 1345.09(F), as well as punitive damages.

Each of the five complaints covers a specified time period and involves specific defendants. In Case No. 2:09-cv-430, Plaintiff asserts that Defendants Metareward, Inc. and Media Breakaway, LLC either sent or authorized or caused agents to send 41 emails to him between December 17, 2005 and April 7, 2006, in violation of § 1345.02(A).[1]

In Case No. 2:9-cv-440, Plaintiff asserts that Defendants Adteractive, Inc. and Media Breakaway, LLC either sent or authorized or caused agents to send 300 emails to him between

_____

[1]      Plaintiff previously asserted claims related to these emails in Case No. 2:06-cv-322, which Plaintiff dismissed.

          For purposes of summarizing the complaints, however, the Court will describe each case in terms of the number of emails involved in the pleading and not set forth here the effect of any subsequent dismissals or amendments. For example, all claims against Defendant Metareward, Inc. have been dismissed with prejudice. (Docs. # 29, 31 in 2:09-cv-513.)

September 15, 2005 and May 3, 2006, in violation of § 1345.02(A).

In Case No. 2:09-cv-512, Plaintiff asserts that Defendants Azoogle.com, Inc. and Media Breakaway, LLC either sent or authorized or caused agents to send 66 emails to him between October 30, 2005 and May 4, 2006, in violation of § 1345.02(A).

In Case No. 2:09-cv-513, Plaintiff asserts that Defendants Search Cactus LLC, Aaron Weitzman, David Weinberg, and Media Breakaway, LLC either sent or authorized or caused agents to send 555 emails to him between January 7, 2006 and February 14, 2007, in violation of § 1345.02(A).

In Case No. 2:09-cv-520, Plaintiff asserts that Defendants World Avenue Holdings, LLC, World Avenue USA, LLC, and Media Breakaway, LLC either sent or authorized or caused agents to send 303 emails to him between October 24, 2005 and May 4, 2006, in violation of § 1345.02(A).

Defendants have moved to dismiss the five complaints. The parties have completed briefing on the motions to dismiss, which are ripe for disposition.

## II. Discussion

### A. Standards Involved

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires an assessment of whether the party asserting a claim has set forth a claim upon which the Court may grant relief. This Court must construe the pleading in favor of the party asserting a claim, accept the factual allegations contained in that party's pleading as true, and determine whether the factual allegations present a plausible claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007). The Supreme Court has explained, however, that "the tenet that a court must accept

as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Accordingly, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950

To be considered plausible, a claim must be more than merely conceivable. *Bell Atlantic Corp.*, 550 U.S. at 556; *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). What this means is that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. *See also Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008).

In addition to Rule 12(b)(6), the motions to dismiss involve Rule 9(b) as well. That rule provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To satisfy this rule, a plaintiff must "at a minimum allege the time, place and content of the misrepresentation upon which he or she relied; the fraudulent intent of the defendant; and the injury resulting from the fraud." *See Michaels Bldg. Co. v. Ameritrust Co., N.A.,* 848 F.2d 674, 680 (6th Cir.1988). *See also United States v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 642 (6th Cir. 2003) (explaining that Rule 9(b)

requires a plaintiff to state with particularity the circumstances of fraud–"i.e., the time, place, and substance"); *American Town Ctr. v. Hall 83 Assocs.*, 912 F.2d 104, 109 (6th Cir. 1990). Thus, although the *circumstances* of the fraud must be stated with requisite particularity, a complaint need not include evidence. *Michaels Bldg. Co.*, 848 F.2d at 680 n.9. What is required is simply sufficient notice of the nature of the claim. *Id*. at 680; *American Town Ctr.*, 912 F.2d at 109-10.

When deciding whether there is fair notice or a lack of particularity, a court must consider the heightened standard of Rule 9(b) in light of the policy of simplified pleadings set forth in Rule 8. *Michaels Bldg. Co.,* 848 F.2d at 679; *American Town Ctr.*, 912 F.2d at 109. For this Court to consider only the particularity of Rule 9(b) would be too narrow and inappropriate considering the simplicity and flexibility in pleading contemplated by the Rules. *Michaels Bldg. Co.*, 848 F.2d at 679. Further, the Sixth Circuit Court of Appeals has held that Rule 9(b) may be relaxed when there has been a lack of discovery and the information needed for a plaintiff to achieve particularity is held exclusively by the opposing party. *Id.* at 680. Rule 9(b) therefore does not require a plaintiff to be omniscient, and it is not intended to prevent courts from reaching the truth behind a case. *Id.* Rather, the main purpose behind Rule 9(b) is to provide notice of a plaintiff's claim to a defendant so that the defendant may be able to prepare an informed responsive pleading. *Id.* at 679; *Coffey v. Foamex, L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993).

### B. Analysis

As a threshold matter, this Court notes that Defendants have requested oral argument on their motions. S. D. Ohio Civ. R. 7.1(b)(2) permits such a request, which is subject to the

Court's determination of whether oral argument is essential to the fair resolution of the cases *sub judice*.  Upon consideration, the Court concludes that oral argument on the motions to dismiss is not warranted at this time and therefore **DENIES** the request for such argument.  Having disposed of this preliminary matter, the Court shall now address each argument targeting the merits of Plaintiff's pleading.

### 1.  Claims One and Two

All of the motions to dismiss present the arguments that Plaintiff has failed to satisfy the requirements of Rule 12(b) and has failed to plead with particularity as required under Rule 9(b).  In regard to the former argument, Defendants assert that Plaintiff's complaints only present generic recitations of the elements of OCSPA violations while lacking factual allegations that allow the Court to draw the inference that Defendants are actually liable for the alleged misconduct.  Defendants argue, for example, that Plaintiff has failed to plead facts that indicate that the alleged unfair or deceptive acts occurred in connection with requisite consumer transactions.

The OCSPA defines a "consumer transaction" as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things."  Ohio Rev. Code § 1345.01(A).  Noting that whether a primarily personal, family, or household purpose is involved is a subjective inquiry focusing on a plaintiff, Defendants posit that the complaints fail to include factual assertions as to Plaintiff's intended use for the advertised items; they also assert that there is nothing inherent in the advertised items that mandates concluding that primarily personal, family, or household purposes exist.

Sixth Circuit precedent and the nature of today's inquiry dispose of Defendants' Rule 12(b)(6) argument. In the post-*Twombly* case of *Ferron v. Zoomego, Inc.*, 276 F. App'x 473 (6th Cir. 2008), the court of appeals addressed whether Plaintiff sufficiently pled all of the elements of his OSCPA claims in a complaint dismissed by another judicial officer in this District. The Sixth Circuit explained that the trial judge "reasoned that while Plaintiff's Complaint alleges that 'each of the email messages transmitted by Defendants to Plaintiff is a "consumer transaction," ' Plaintiff had failed to plead any factual allegations in support of this legal conclusion by categorizing the emails as sales, leases, assignments, award by chance, etc." *Id.* at 475-76. The court of appeals upheld that determination. In so doing, the Sixth Circuit noted that whether a consumer transaction was involved was a legal conclusion, while factual allegations were necessary for each element of that legal conclusion. *Id.* at 476. The court of appeals looked to the pleading for these factual allegations and explained:

> We can construe the language of Paragraph 15 of Plaintiff's Complaint, describing the factual content of some email messages as notifying Plaintiff that he had won a prize (albeit by using the exact language of the pertinent Ohio Administrative Code sections) to find that he alleged some email solicitations sent by unidentified Defendants were to supply an "award by chance." However, we can find no direct or inferential allegation in his Complaint that any email solicitations to supply an award by chance were for primarily personal, family, or household purposes. Thus, while Plaintiff may have sufficiently alleged in his Complaint that the email messages were solicitations, and that the solicitations were to supply an "award by chance" to an individual, *Plaintiff did not allege that the award by chance was "for purposes that are primarily personal, family, or household" as required to satisfy the definition of a "consumer transaction" under the OCSPA*. Without this additional allegation, Plaintiff has not pleaded sufficiently with respect to a material element of his claim-that the email messages were "consumer transactions." Therefore, he has failed to state a claim on which relief can be granted.

*Id.* at 476 (emphasis added). Thus, what the Sixth Circuit found *Twombly* to require in such cases was an allegation that an award by chance was for purposes that are primarily personal,

family, or household.

What the complaints *sub judice* allege are that each award involved in each email solicitation "is a good, service and/or intangible for purposes that are primarily personal, family or household." Such allegations, absent from the complaint in *Zoomego, Inc.*, distinguish today's pleadings from Plaintiff's prior, dismissed complaint. Consequently, these allegations satisfy the *Twombly* standard.

Defendants label Plaintiff's personal, family, or household use allegations as cursory and argue that they fail to provide a factual basis supporting the conclusion that the advertised items are covered by the OCSPA. This argument fails to credit that by classifying the award or prize involved as he does, Plaintiff is representing by inference to this Court his intended use for the items involved. In other words, although the items may not be intrinsically and solely for primarily personal, family, or household purposes–they may be capable of work-related purposes as well–the items as perceived by Plaintiff allegedly would be put to purposes that would place any exchange within the realm of a consumer transaction. The Sixth Circuit did not say in *Ferron v. Zoomego, Inc.* that Plaintiff has to plead what personal, family, or household item he would purchase with the Target store gift card offered in one of the emails. Rather, the court of appeals requires Plaintiff to indicate that he would use that gift card for a primarily personal, family, or household purpose. Plaintiff has made such allegations by reasonable inference.

This Court should not credit such allegations, Defendants argue, because Plaintiff's private law practice has focused on pursuit of alleged OCSPA violations in advertisements sent to him or his friends. Therefore, Defendants conclude, Plaintiff's assertions that the offers constituted consumer transactions lack trustworthiness. This argument ignores the standard that

controls today's inquiry. The Court cannot weigh the veracity of the allegations Plaintiff makes; rather, this Court must accept the factual allegations contained in Plaintiff's pleading as true and then determine whether the factual allegations present plausible claims. It simply does not matter at this stage whether this Court believes the inferences. Precedent teaches that asking for plausible grounds to create an inference does not impose a probability requirement. *Twombly*, 550 U.S. at 556. Instead, all that is required is enough factual content, necessarily accepted as true, to raise a reasonable expectation that discovery will reveal evidence of illegality. *Id.* This standard is not as strict as Defendants argue given that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.' " *Id.* (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *see also Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 630 (6th Cir. 2009).

This Court declines Defendants' invitation to engage in what amounts to "requir[ing] heightened fact pleading of specifics" and instead looks for "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Thus, as explained above, the Court regards Plaintiff's pleading not as just a collection of threadbare recitals of elements, but as presenting allegations of the sort discussed by the court of appeals in *Zoomego, Inc.* Plaintiff has pled factual allegations that allow the Court to draw the reasonable inferences at issue, and this Court is not permitted to weigh or disbelieve these factual allegations in the motion to dismiss context.

Defendants also argue that dismissal is warranted under Rule 12(b)(6) on the grounds that Plaintiff has failed to identify precisely how each email violates the OCSPA. Criticizing paragraphs in each claim of the complaints as "formulaic" and "substantively identical,"

Defendants argue that Plaintiff has simply parroted language from the Ohio Administrative Code provisions that form the basis of the asserted OCSPA violations. Defendants cite as an example Plaintiff's allegation that the emails fail to disclose clearly and conspicuously any and all conditions necessary to receive the items offered without pleading what specific conditions were purportedly omitted or disclosed in an unclear or inconspicuous manner. Impermissibly relying on material extrinsic to the pleadings, such as their history with Plaintiff in other cases and correspondence by Plaintiff's counsel, Defendants again argue that the complaints fail to set forth factual content presenting the elements of an OCSPA claim.

This Court disagrees. As discussed above, Rule 12(b)(6) requires Plaintiff to plead facts sufficient to present a plausible claim. Plaintiff has pled that Defendants failed to disclose or disclose sufficiently material. This is a factual allegation leading to a legal conclusion, and the Court must accept as true that Defendants failed to disclose some conditions or terms. Nothing in *Twombly* and its progeny require Plaintiff to specify in the pleading what those conditions are. *Twombly* in fact provides that "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." 550 U.S. at 555. There is thus no basis in Rule 12(b)(6) for the heightened pleading Defendants urge this Court to require. *Cf. Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 725 (6th Cir. 2010) (citing *Twombly* in holding that a plaintiff need not plead "specific facts" to support a claim when he has pled a set of facts that, accepted as true, would entitle him to relief). Accordingly, the court of appeals has found an unsigned proposal of a settlement agreement attached to a pleading to constitute sufficient detail to assume the agreement existed for purposes of a motion to dismiss. *Courie*, 577 F.3d at 630. The complaints here assert that conditions or terms existed, and Defendants' own argument in their briefing is

that the content of such conditions or terms was contained in the webpages (accessible via hyperlinks) that Plaintiff asserts in his third claim Defendants have destroyed. As the court of appeals was persuaded in regard to content in *Courie*, this Court is similarly persuaded that website conditions or terms existed–at least for purposes of resolving the motions to dismiss.

Defendants also attack Plaintiff's assertion of his allegations "upon information and belief." Another judicial officer in this District has explained that "[a] plaintiff may plead fraud based 'upon information and belief,' but 'the complaint must set forth a factual basis for such belief, and the allowance of this exception must not be mistaken for license to base claims of fraud on speculation and conclusory allegations.' " *Ferron v. SubscriberBase Holdings, Inc.*, No. 2:08-cv-760, 2009 WL 650731, at *5 (S.D. Ohio Mar. 11, 2009) (quoting *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 878 (6th Cir. 2006)). The pleading here satisfies this criteria.

This leads to the issue of whether Plaintiff must comply with the particularity requirement of Rule 9(b) in pleading claims arising under the OCSPA. Defendants contend that Plaintiff has not pled fraud with sufficient particularity, as required by Rule 9(b), insofar as he has failed to identify the specific shortcomings of each email at issue. Defendants also argue that the complaints not only fail to provide factual support for an assertion of damages, but also fail to assert any injury related to claims one and two in contravention of Rules 9(b) and 12(b)(6).

In a prior *Ferron* case, the undersigned judicial officer addressed whether Rule 9(b) applied to OCSPA claims and concluded that it did not. *Ferron v. Search Cactus, L.L.C.*, No. 2:06-cv-327, 2007 WL 1792332, at *4 (S.D. Ohio June 19, 2007). That conclusion turned on the

implicit rationale that unfair or deceptive acts under the OCSPA " 'need not rise to the level of fraud.' " *Hacker v. Nat'l Coll. of Bus. & Tech.*, No. 23489, 2010 WL 404844, at *6 (Ohio Ct. App. Feb. 5, 2010) (quoting *Mannix v. DCB Serv., Inc.*, No. 19910, 2004 WL 2848921, at *3 (Ohio App. Nov. 24, 2004)). *See also Shumaker v. Hamilton Chevrolet, Inc.*, 184 Ohio App. 3d 326, 335, 920 N.E.2d 1023, 1031 (Ohio App. 2009).

At least two other judicial officers in this District appear to disagree, however, and have concluded that "Rule 9(b) applies in cases such as this because actions for deceptive trade practices are, at their core, fraud claims." *Ferron v. Subscriberbase Holdings, Inc.*, No. 2:08-cv-760, 2009 WL 650731, at *5 n.4 (S.D. Ohio Mar. 11, 2009) (citing *Ferron v. Zoomego, Inc.*, No. 2:06-cv-751, 2007 WL 1974946 (S.D. Ohio July 3, 2007)). The Sixth Circuit declined to reach the issue in *Ferron v. Zoomego, Inc.*, 276 F. App'x 473, leaving the potential application of Rule 9(B) unresolved.

Assuming *arguendo* that the heightened pleading standard of Rule 9(b) applies here, this Court concludes that Plaintiff's complaints satisfy that standard. In discussing its "long-standing holding that, under Rule 9(b), a plaintiff must 'allege the time, place, and content of the alleged misrepresentation . . . the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud' " the Sixth Circuit has "also made clear, however, [that] this requirement should be understood in terms of Rule 9(b)'s broad purpose of ensuring that a defendant is provided with at least the minimum degree of detail necessary to begin a competent defense." *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008) (quoting *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007)). The pleadings here, although they could be more detailed in some specifics, nonetheless present

sufficient particularity to enable Defendants to begin mounting a competent defense. See

*Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 n.9 (6th Cir. 1988) ("[D]efendants

border on urging that Rule 9(b) requires that plaintiff plead the *evidence* of the fraud. The rule,

however, requires only that the 'circumstances' of the fraud be pled with particularity, not the

evidence of the case. While 'circumstances' may consist of evidence, the rule does not mandate

the presentation of facts and evidence in a complaint.").

Similarly unsuccessful for Defendants is their argument that Rules 9(b) and 12(b)(6)

compel dismissal because the complaints fail to provide factual support for an assertion of injury

and damages. Another judicial officer in this District has concluded that the OCSPA does not

require a showing of reliance on email solicitations or injury. *SubscriberBase Holdings, Inc.*,

2009 WL 650731, at *6. Citing Ohio law stating that " 'under the Consumer Sales Practices Act

it is not necessary that a sale actually take place before a supplier may be held liable to a

consumer for deceptive acts,' " that judicial officer correctly concluded that "[a]ccordingly,

Section 1345.02 does not require [a] [p]laintiff to allege reliance on or damages arising out of the

deceptive scheme." *Id.* (quoting *Weaver v. J.C. Penny Co., Inc.*, 53 Ohio App. 2d 165, 168, 372

N.E.2d 633, 635 (Ohio App. 1977)). This Court agrees and concludes that dismissal is not

warranted here. *See Weaver*, 53 Ohio App. 2d at 169, 372 N.E.2d at 635 ("A solicitation to sell

goods or services intended primarily for personal, family, or household use, may be sufficient to

give rise to liability even in the absence of an actual sale [i]f a deceptive act is committed in

connection with that solicitation.").

Defendants next argue that dismissal is warranted of Plaintiff's claims under §

1345.02(A) for failing to register fictitious business names with the Ohio Secretary of State.

Defendants note that Plaintiff's pleading fails to identify a specific statute or rule giving rise to such a duty to register, but suggests that Plaintiff is relying on Ohio Revised Code § 1329.01. Plaintiff in turn directs this Court in his briefing to the Ohio Attorney General's Public Inspection File, which he asserts supports that failure to register as required by § 1329.01 constitutes an OCSPA violation.

In one of Plaintiff's prior cases, the undersigned judicial officer addressed this precise issue and explained at length why "a § 1329.01 violation is not a § 1345.02(A) violation and does not afford a consumer a private cause of action." *Ferron v. VC E-Commerce Solutions, Inc.*, No. 2:06-cv-322, 2007 WL 295455, at *7 n.6 (S.D. Ohio Jan. 29, 2007). The Court incorporates by reference the relevant portion of that analysis, recognizing that the latter proposition proves dispositive here. *Id.* at *5-7. Thus, as Defendants note in their reply memorandum, regardless of whether the failure to register indeed presents a § 1345.02(A) violation that the Ohio Attorney General can pursue, there is simply no private cause of action for such lack of registration. The Court finds Defendants' argument for dismissal of this component of Plaintiff's complaints well taken.

### 2. Claim Three

Defendants next argue that Plaintiff has failed to satisfy the pleading requirements of Rules 9(b) and 12(b)(6) in regard to his claim for the intentional interference with or destruction of evidence. Plaintiff asserts that spoliation occurred because Defendants ceased hosting various websites made relevant by hyperlinks in the emails, which means that Defendants failed to preserve evidence. Defendants argue that Plaintiff has failed to plead any facts indicating when and why the websites were taken down. Additionally, Defendants present the dubious argument

that Plaintiff committed spoliation by failing to retain the website evidence.  This latter argument, presented by Defendants with no supporting authority, warrants little comment beyond a statement of rejection by this Court.

In support of dismissal on the former grounds set forth above, Defendants again direct this Court to *Ferron v. SubscriberBase Holdings, Inc.*, 2009 WL 650731.  That decision turned on the conclusions that the spoliation claim was one for the fraudulent concealment of evidence and that the pleading failed to present facts regarding the why and when the websites were taken down.  *Id.* at *5-6.  Despite that non-binding case, Defendants' Rule 9(b) argument for dismissal fails here.

Even assuming *arguendo* that Rule 9(b) applies to the spoliation claim, this Court is cognizant that " '[Rule 9(b)] may be relaxed where information is *only* within the opposing party's knowledge.' "  *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003) (quoting *Michaels Bldg. Co.*, 848 F.2d at 680).  The *when* is not reasonably within Plaintiff's knowledge absent discovery.  The *why* is a question of intent that can be culled by reasonable and obvious inference from the pleadings.  The effect of Defendants' alleged spoliation on Plaintiff's claims is implicit.  The complaints thus present the necessary pleading and enable Defendants to begin to mount a competent defense.  *See Michaels Bldg. Co.*, 848 F.2d at 680 ("Rule 9(b) does not require omniscience; rather, the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim.").  Neither Rule 9(b) nor 12(b)(6) compel dismissal here.

### 3.  Attorney's Fees

Defendants argue that Plaintiff cannot recover attorneys' fees under the OCSPA because

he is the only identified shareholder of his law firm. Although two associates of that firm represent Plaintiff, Defendants argue, this is simply a ruse to circumvent the general rule that *pro se* litigants cannot recover attorneys' fees. The distinguishable authority on which Defendants rely, however, targets *pro se* litigants. Plaintiff is not a *pro se* litigant, and this Court declines Defendants' slippery slope invitation to recast a firm shareholder whose firm represents him as a *pro se* individual. Plaintiff has counsel who are representing him, subjecting themselves to various risks and sustaining various obligations (i.e., Rule 11). There is nothing beyond mere speculation to suggest here that Plaintiff's counsel are not functioning as independent counsel. This Court will not ignore the presence of counsel simply because they are also Plaintiff's employees. To do so would invite meaningless distinctions because logic would progressively render no law firm capable of representing any partner at that firm, however inconsequential his or her role in management of the firm may be. The Court declines to follow Defendants' attempt to impose a limitation on the OCSPA that the statutory scheme does not embrace.

### 4. *Res judicata*

Defendant Search Cactus argues in Case No. 2:09-cv-513 that *res judicata* bars Plaintiff's claims against the company for emails Plaintiff received prior to April 3, 2006. Search Cactus reasons that these emails should have been litigated in a state municipal court case that Plaintiff voluntarily dismissed with prejudice and reaching a settlement. (Doc. # 11-4 in 2:09-cv-513.) Search Cactus also argues that dismissal of claims involving pre-April 3, 2006 emails is warranted based on this Court's decision in another case Plaintiff had before this Court, Case No. 2:06-cv-327. In that case, Plaintiff asserted OCSPA claims against Search Cactus and other defendants. The defendants in that case filed for summary judgment on grounds that

included a *res judicata* argument, asserting that the doctrine barred claims for emails received before April 3, 2006, the date on which the state court case was dismissed with prejudice. This Court agreed and granted summary judgment on the claims related to the pre-April 3, 2006 emails. (Doc. # 237 in 2:06-cv-327.)

Plaintiff argues that *res judicata* does not apply. He reasons that because this Court's previous summary judgment decision was an interlocutory order, it became null and void upon the voluntary dismissal of that case. Plaintiff also asserts that this Court should decline to adopt the reasoning set forth in the summary judgment decision because it was incorrectly reasoned.

This Court agrees with Search Cactus, Weitzman, Weinberg, and Media Breakaway. Regardless of the nature of the summary judgment decision, the rationale set forth in that October 26, 2007 Opinion and Order, which this Court adopts and incorporates by reference, proves dispositive here. (Doc. # 237 in 2:06-cv-327.) The Court reaches now the same conclusion it reached then: *res judicata* bars claims based on *all* the pre-April 3, 2006 emails because Plaintiff could have and should have brought such claims in the municipal court case, regardless of whether the emails constituted separate or a single transaction. Additionally, the foregoing *res judicata* rationale extends, as before, to those in privity with Search Cactus (a point that Plaintiff does not address in his memorandum in opposition).

### 5. Statute of limitations

In Case No. 2:09-cv-513, Defendants Search Cactus, Weitzman, Weinberg, and Media Breakaway argue that the statute of limitations has expired on claims related to three "new" emails, constituting exhibit 104 (dated February 7, 2006), exhibit 244 (dated March 11, 2006), and exhibit 361 (dated April 4, 2006) to the relevant complaint. (Doc. # 3-21, at 11, Ex. 104 in

2:09-cv-513; Doc. # 3-25, at 13, Ex. 244 in 2:09-cv-513; Doc. # 3-29, at 17, Ex. 361 in 2:09-cv-513.)  The Court's decision on the *res judicata* argument, discussed above, renders the limitations argument moot in regard to the first two emails at issue.  This leave the April 4, 2006 email subject to the limitations attack.

There is a two-year statute of limitations on OCSPA claims of the sort asserted in Case No. 2:09-cv-513.  Ohio Rev. Code § 1345.10(C) ("An action under sections 1345.01 to 1345.13 of the Revised Code may not be brought more than two years after the occurrence of the violation which is the subject of suit, or more than one year after the termination of proceedings by the attorney general with respect to the violation, whichever is later.").  Plaintiff filed the complaint in Case No. 2:09-cv-513 in the Franklin County Court of Common Pleas on June 3, 2009.  (Doc. # 3.)  This falls well after the two-year limitations period attached to the April 4, 2006 email.  Accordingly, any OCSPA claim predicated on that email is time barred.

In Case No. 2:09-cv-520, Defendants World Avenue USA, LLC and World Avenue Holdings, LLC argue that the two-year statute of limitations bars all claims against them.  They argue that because Plaintiff failed to name them in a prior dismissed case, Case No. 2:06-cv-322, Ohio's Savings Statute does not salvage the claims that form the basis of the lawsuit against them in Case No. 2:09-cv-520.  *See* Ohio Rev. Code § 2305.19.

At the core of this argument is the status of World Avenue USA, LLC and World Avenue Holdings, LLC.  The defendant companies have attached to their briefing certificates of good standing indicating their State of Delaware incorporation, as well as a certificate showing such information for The Useful, LLC.  (Docs. # 16-5, 16-6, 16-7.)  This Court can consider such

documents as part of its Rule 12(b)(6) analysis.[2]  *Armengau v. Cline*, 7 F. App'x 336, 344 (6th

Cir. 2001) (recognizing that a court can consider public records in considering a Rule 12(b)(6)

motion); *see also Rodney v. LaHood*, No. 09-1393, 2010 WL 10919, at *2 (6th Cir. Jan. 4, 2010)

("A court considering a 12(b)(6) motion may consider materials in addition to the complaint if

such are public records or otherwise appropriate for the taking of judicial notice.").  These

documents indicate that World Avenue USA, LLC was formed on September 21, 2006 (Doc. #

16-5), that World Avenue Holdings, LLC was formed on June 1, 2006 (Doc. # 16-6), and that

The Useful, LLC was originally formed as World Avenue U.S.A., LLC on June 26, 2006, and

later changed its name on September 19, 2006 (Doc. # 16-7).  Noting that the emails at issue in

Case No. 2:09-cv-520 were received between October 24, 2005 and May 4, 2006–before they

were even formed–World Avenue USA, LLC and World Avenue Holdings, LLC argue that the

statute of limitations on the claims against them expired at the latest on May 4, 2008.  Moreover,

the defendant companies assert, Ohio's Savings Statute, Ohio Revised Code § 2305.19, does not

apply because Case No. 2:06-cv-322 and Case No. 2:09-cv-520 are not substantially the same as

required because the complaints involve different parties.

　　　　Plaintiff disagrees.  He notes that he had previously named The Useful (as the

useful.com) as a defendant in the prior case and that his complaint in Case No. 2:09-cv-520

asserts that World Avenue USA, LLC has been owned by, or is a subsidiary of, World Avenue

Holdings, LLC and that both companies have done business under numerous names, including

---

[2]      This Court declines to consider a fourth proffered exhibit, the Declaration of Fidel
D. Dhana, a Vice president of World Avenue Holdings, LLC, because that document is not a
public record and would constitute extrinsic evidence.  (Doc. # 16-8 in 2:09-cv-520.)

The Useful.[3]  Plaintiff argues § 2305.19 allows him to re-file an action within one year if the

original action was dismissed without prejudice, as Case No. 2:06-cv-322 was.  The statute

applies, Plaintiff asserts, because World Avenue USA, LLC and World Avenue Holdings, LLC

are alter ego companies of The Useful and variant business names thereof.

The parties disagree as to the effect on their dispute of *Children's Hospital v. Ohio

Department of Public Welfare*, 69 Ohio St. 2d 523, 433 N.E.2d 187 (1982).  In that case, the

Ohio Supreme Court explained that "[t]he savings statute applies when the original suit and the

new action are substantially the same.  The actions are not substantially the same, however,

when the parties in the original action and those in the new action are different."  *Id.* at 525, 433

N.E.2d at 189.

Plaintiff attempts to distinguish this statement by pointing to discussion of the state court

decision by a judicial officer in the Northern District of Ohio, who explained that he was

"persuaded that the addition of new parties in *Children's Hospital* was a circumstance

supporting the conclusion that the complaints were not substantially the same, not a *sine qua non*

for such conclusion."  *Lum v. Mercedes Benz USA, L.L.C.*, No. 3:05CV7191, 2006 WL 1174228,

at *2 (N.D. Ohio Apr. 28, 2006).  That same judicial officer stated that "a refiled complaint may

be substantially the same as an original complaint even where the designation of the parties

differs."  *Id.* at *2 n.1 (citing *Cox v. Ohio Parole Comm'n*, 31 Ohio App. 3d 216, 217-18, 509

N.E.2d 1276, 1278 (Ohio App. 1986).  Drawing on this reasoning, Plaintiff concludes that

_____

[3]        The Court notes that Plaintiff's briefing incorrectly references Case No. 2:06-cv-
327 as the prior case.  Plaintiff actually relies upon his actions and pleading in Case No. 2:06-cv-
322, beginning when he named The Useful as a defendant in his second amended complaint.
(Doc. # 126 in 2:06-cv-322 ¶ 48.)

"[a]lthough [World Avenue USA, LLC and World Avenue Holdings, LLC] were not specifically named as defendants in Plaintiff's previous lawsuit, Plaintiff's Complaint in this case pleads facts establishing that World Avenue USA, LLC and World Avenue Holdings, LLC stand in the shoes of The Useful, which was named, and may be held accountable for The Useful's tortious conduct." (Doc. # 31, at 34 in 2:09-cv-520.)

World Avenue USA, LLC and World Avenue Holdings, LLC urge this Court to reject the alter-ego theory on the grounds that Plaintiff has failed to plead any facts supporting what is a legal conclusion: the asserted alter-ego status of these companies. The defendant companies posit that *Lum* in fact supports their view of the *Children's Hospital* holding, stating that *Lum* "held that a re-filed complaint should be dismissed pursuant to *Children's Hospital* where the parties or the claims have changed such that the action is not substantially similar to the original action. It did not hold that new defendants may be added in a re-filed action under the savings statute." (Doc. #34, at 40 in 2:09-cv-430.) World Avenue USA, LLC and World Avenue Holdings, LLC also attempt to explain away *Cox* by noting that because that case involved a first case filed against individual commissioners in a court in which only state agencies could be sued and a second case properly naming Ohio's Parole Commission, the complaints were substantially similar. The claims and ultimately the *intended* parties were the same.

The crux of the instant dispute therefore lies in whether Plaintiff has added new parties so as to defeat application of the savings statute. As noted, Ohio law provides that the key is whether the prior action and the new action are substantially the same. One Ohio court of appeals has explained:

Whether a new action is substantially the same as an original action for purposes of the savings statute does not always depend on whether the original

22

action set forth the same legal theories as those asserted in the new complaint. Instead, the question largely turns on whether the original complaint and the new complaint contain similar factual allegations so that it can reasonably be said that the party or parties were put on fair notice of the type of claims that could be asserted. See *Bowshier v. North Hampton,* Clark App. No.2001CA3, 2002-Ohio-2273 (concluding that new complaint alleging breach of fiduciary duty was substantially the same as claims asserted in original complaint, "taxpayer action, declaratory judgment action, and civil rights claim," when the original complaint and the new complaint both asserted the same facts); *Rios v. Grand Slam Grille* (Feb. 18, 1999), Cuyahoga App. No. 75150 (concluding that new complaint asserting malicious prosecution and abuse of process was substantially the same as original complaint that asserted malicious prosecution when both claims arose out of the same conduct and both the new and original complaints alleged the same facts establishing the right to relief); *Vercellotti v. HVC-Daly, Inc.* (Dec. 5,1997), Lucas App. No. L-97-1063, discretionary appeal not allowed, (1998), 82 Ohio St.3d 1515, 692 N.E.2d 620, and *Carrier v. Weisheimer Companies, Inc.* (Feb. 22, 1996), Franklin App. No. 95APE04-488 (both stating that in determining whether new complaint substantially the same as original complaint "a court must determine whether the allegations in the first action gave the defendant fair notice of the allegations in the second action"); *Jones v. St. Anthony Med. Ctr.* (Feb. 20, 1996), Franklin App. No. 95APE08-1014 (concluding that new complaint and original complaint were substantially the same when the new complaint differed "only to the extent that new theories of recovery, based on the same factual occurrence, are added to the new complaint"); *Andrews v. Scott Pontiac Cadillac GMC, Inc.* (June 2, 1989), Sandusky App. No. S-88-32 (stating that "a new complaint is substantially the same as an original complaint * * * where the new complaint differs only to the extent that new theories of recovery, based on the same factual occurrence, are added to the complaint").

Thus, when a new complaint contains factual allegations that were not alleged in the original complaint, and further contains a new theory of relief based on the new factual allegations, the savings statute will not apply. See *Vercellotti,* supra (concluding that when the new complaint raised a new legal theory, a defective product claim, and further added factual allegations not raised in the original complaint to support the defective product claim, the savings statute did not apply).

*Lanthorn v. Cincinnati Ins. Co.*, No. 02CA743, 2002 WL 31768796, at *4-5 (Ohio App. Dec. 5, 2002) (paragraph designations omitted). Thus, a re-filed action can permissibly present new claims or theories of recovery based on the same facts. *Id.*; *see also Fiske v. U.S. Health Corp. of S. Ohio*, No. 04CA2942, 2005 WL 674445, at *4-5 (Ohio App. Mar. 11, 2005).

The two complaints involved in today's inquiry present the same claims arising from the

same set of factual allegations. World Avenue USA, LLC and World Avenue Holdings, LLC argue, however, that the new complaint substitutes parties. They assert that alter-ego liability is a legal conclusion and not a factual conclusion, which means that this Court need not accept what they paint as Plaintiff's belated attempt to add substitute defendants via artful pleading. But the latest complaint involved here asserts factual allegations that, if true, could lead to the legal conclusion that would permit application of the alter-ego theory to establish liability. The inference that arises by the allegations that the defendant companies have done business as The Useful and variants of that entity presents facts that could support the elements of the alter-ego theory.

The Court is cognizant that the "substantially the same" issue unquestionably presents a close call. Even in light of *Cox*'s apparent endorsement of "close enough" pleading, other state case law exists adhering to a narrow application of Ohio's savings statute. For example, another state court of appeals addressed a situation in which, following dismissal of a prior action, a plaintiff attempted to add one new defendant to a subsequent action. *Crawford v. Medina Gen. Hosp.*, No. 2604-M, 1997 WL 537675, at *1-2 (Ohio App. Aug. 20, 1997). The court of appeals held that § 2305.19 applied to save claims against those four defendants named in both the old and the new actions, but that the statute of limitations barred select claims against the defendant added to the second action because the savings statute did not apply to this belated defendant. *Id.* at *2-3. In reaching this result, the state court explained that "where, as here, the claims made and the relief sought are substantially similar, then to the extent the named defendants are the same in each complaint, the savings statute should apply." *Id.* at *2.

Similarly, another Ohio court of appeals distinguished *Cox* as a "unique situation."

*Lewis v. Lawyer Chiropractic Clinic*, No. 98CA2590, 1999 WL 713605, at *6 (Ohio App. Aug. 26, 1999). The *Lewis* court addressed a situation in which a plaintiff has added four chiropractors in a second action who were not named as defendants in a previously dismissed action. *Id.* at *5-6. That court of appeals examined whether the plaintiff had provided pre-lawsuit notice to the four new defendants of the first law suit as required by an applicable medical malpractice statute, whether the plaintiff had named these individuals in that first action, whether the first action had been filed in a court of special jurisdiction as in *Cox* so as to create an inference of who constituted the intended defendants, and, notably, whether plaintiff had presented evidence of a special contractual relationship between various defendants that would permit a conclusion that the first lawsuit was an attempt to commence an action against the four chiropractors. *Id.* at *6. Finding that each of these factors weighed against the plaintiff, the state court concluded that the second action was not substantially the same as the first action so as to render the savings statute applicable. *Id.*

Such case law informs today's decision–especially the Ohio courts' focus on a plaintiff's intent and the relationship between various defendants. The complaint in 2:06-cv-322 did not name World Avenue USA, LLC and World Avenue Holdings, LLC, although depending on the circumstances of the corporate relationships involved, these two companies might have been on fair notice of the type of claims that could have been eventually asserted against them via amendment absent the prior dismissal. Thus, like *Cox*, the facts may reflect a situation in which a plaintiff named one or more intended defendants improperly in one case and properly in the next, all the while with the intent to reach the party ultimately responsible for the alleged wrongdoing. Or the facts may ultimately reveal that Plaintiff has unmistakably dropped the ball

and is foreclosed from continuing to proceed against World Avenue USA, LLC and World Avenue Holdings, LLC.  *See Heilprin v. Ohio State Univ. Hosps. of Ohio State Univ.*, 31 Ohio App. 3d 35, 37, 508 N.E.2d 178, 180 (Ohio App. 1986) (holding that § 2305.19 did not preserve claims against a defendant named in a second action but not in the first).

The end result of this uncertainty is that this Court declines to resolve the statute of limitations issue in favor of World Avenue USA, LLC and World Avenue Holdings, LLC in the context of the instant motion to dismiss.  This Court must accept the factual allegations of "doing business as" as true and draw all reasonable inferences in Plaintiff's favor, which means that there *may* be a basis for a legal conclusion favoring Plaintiff–the alter ego theory–which may in turn establish permissible application of the savings statute so as to defeat a statute of limitations defense.  Discovery and eventual disposition based on the precise relationships of the companies involved will resolve this issue, whether through summary judgment or another dispositive mechanism.  The Court emphasizes that it expresses no conclusive opinion as to application of the alter-ego theory or the statute of limitations defense.  Today's narrow holding is simply that based on the spartan record and the briefing before this Court, the requested dismissal is not warranted at this time.

### 6. Jurisdiction

In Case No. 2:09-cv-520, World Avenue Holdings, LLC argues that dismissal is warranted because this Court lacks both general and personal jurisdiction over the company. Relying on the aforementioned certificates of good standing and the Declaration of Fidel D. Dhana (Docs. # 16-5, 16-6, 16-7, 16-8 in 2:09-cv-520), the last of which this Court now considers, World Avenue Holdings, LLC asserts that the Court should credit its fairly undetailed

documents and self-serving representations over the allegations of the complaint and persuasive authority.

The undersigned has previously rejected the same essential argument raised by another defendant in a similar case brought by Plaintiff. *See Ferron v. 411 Web Directory*, No. 2:09-cv-153, 2009 WL 2047780, at *1-6 (S.D. Ohio July 6, 2009). Other judicial officers in this District have reached the same result in other similar cases based on the same core reasoning. *See Ferron v. e360Insight, LLC*, No. 2:07-cv-1193, 2008 WL 4411516, at *2-4 (S.D. Ohio Sept. 29, 2008); *Ferron v. Echostar Satellite LLC*, No. 2:06-cv-453, slip op. at 4-5 (S.D. Ohio Sept. 24, 2008). This Court incorporates by reference the relevant portion of all of the foregoing decisions and concludes that based on the same rationale contained therein, coupled with the uncertainty surrounding the not yet fully apparent (and therefore not fully accepted by this Court) corporate relationship of World Avenue Holdings, LLC to various actors involved in this litigation, Plaintiff has met his relatively slight burden of establishing a *prima facie* case of personal jurisdiction over World Avenue Holdings, LLC. The company's jurisdictional challenge therefore fails.

### III. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the joint combined motions to dismiss. (Doc. # 10 in 2:09-cv-430; Doc. # 12 in 2:09-cv-440; Doc. # 9 in 2:09-cv-512; Doc. # 11 in 2:09-cv-513; Doc. # 16 in 2:09-cv-520.) This Court dismisses:

(1) that portion of Plaintiff's pleadings predicated on Defendants' asserted failure to register fictitious business names with the Ohio Secretary of State; and

(2) all claims based on the pre-April 3, 2006 emails and the April 4, 2006 email in Case

No. 2:09-cv-513.

All other claims remain pending.

**IT IS SO ORDERED.**

_____/s/ Gregory L. Frost_____
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE